(July 21, 2011)

■ THOMAS COTTER et al., Appellants, v PAL & LEE INC. et al., Respondents, et al., Defendants. [928 NYS2d 262]—

Plaintiff Thomas Cotter, a New York City firefighter, injured his knee and thumb on September 15, 2005 while extinguishing a fire at defendant Mohammed Faiz's (Faiz) Kennedy Fried Chicken restaurant. Defendant Pal & Lee Inc. (Pal) owns the five-story building where the restaurant is located.

Plaintiffs commenced this personal injury action against Pal and Faiz on May 4, 2006, alleging that defendants' violation of various sections of the Administrative Code of the City of New York resulted in a hole in the floor, accumulated debris and other unsafe conditions.[1] They claim that these violations directly or indirectly caused plaintiff's injuries and that he is therefore entitled to recover under General Municipal Law § 205-a.[2]

Faiz testified at deposition that he leased the premises in 1997, and that both he and the owners have made repairs since

1. Administrative Code former § 27-127 generally imposes a duty to keep the premises safe, and requires that "[a]ll service equipment, means of egress, [and] devices . . . shall be maintained in good working condition" (repealed in 2007 and recodified at Administrative Code § 28-301.1). Other sections require sealing window and/or exterior wall openings; use of "fire-stopping" structure/materials (such as interior doors, ceilings, walls, floors and shafts); and ensuring that access areas, exits, and passageways are visible and free of obstructions.

2. General Municipal Law § 205-a, the statutory exception to the "firefighter's rule," permits a plaintiff firefighter to bring a cause of action when his injury occurs as a result of a defendant's failure to comply with a safety statute or regulation and the violation increases the risks associated with firefighting (*Meyer v Moreno*, 258 AD2d 315 [1999]; *Scherrer v Time Equities*, 218 AD2d 116, 122 [1995]).

then. He testified that when he entered into the lease, there was an "X" inside a square spray-painted on the exterior, but that he did not know what the symbol denoted. Faiz testified that shortly after taking possession he renovated the ground floor, adding new support beams, tile flooring, fire-suppression and exhaust systems, and equipped the premises with fire extinguishers. The floors above the restaurant remained vacant.

Faiz further testified that the restaurant had been cleaned three days before the fire in anticipation of an inspection by the City Health Department. He testified that the restaurant was inspected routinely by the Health Department, twice annually by the New York City Fire Department (FDNY), and intermittently by the Building Department, and that no violations had been issued by the Building Department. Faiz further testified that he did not observe any holes or cracks in the floor when he closed the restaurant at 1:00 A.M. on the night of the fire.

Plaintiff testified at deposition that at approximately 2:00 A.M., his station responded to a report of a fire at Faiz's restaurant. When he arrived at the fire, he observed the spray-painted "X" on the exterior of the building, which he understood to mean that the building had experienced a prior fire, the roof was "open," and that he should be on his "A" game. He testified that he and two other firefighters entered the building carrying a hose spraying "tons of water."

Plaintiff testified that he could not see due to the heavy smoke and had to climb over "debris." He further testified that his foot became lodged in something that "just wasn't part of the floor." Although he characterized the condition as a hole, he admitted that he did not see any holes and did not "know for a fact" what trapped his foot. Plaintiff said he was "sure" that some of the obstacles he encountered were restaurant "fixtures" strewn "all over the place" by the hose water, which had enough velocity to "move a couch" or "blow a hole in a tin roof."

The two firefighters who accompanied plaintiff were deposed and testified that they too could not see due to the heavy smoke, but that there were tables, chairs, and booths knocked down. One of them also fell, but he was uncertain as to what caused him to fall. After approximately 10 minutes in the building, the men were called out due to the heavy fire condition, and efforts to extinguish the fire continued from outside the building.

Post-fire inspection reports were prepared by the FDNY Fire Chief who was on duty the night of the fire, a fire marshal, and the fire inspector hired by Faiz's insurer. The inspectors did not report holes in the area of the restaurant where the firefighters were located. The reports did not agree on the point of origination or cause of the fire.

The FDNY Fire Chief testified that the "X" on the building is one of several symbols used by the fire department to indicate the stability and occupancy of a building. He explained that an "X" indicates that the building is vacant and firefighting operations should be conducted from the exterior. He testified that an owner may make repairs to the premises after the building is marked and that the FDNY does not inspect "marked" buildings to see if repairs have been made. The FDNY Fire Chief testified that although there was an "X" on defendants' building at the time of the fire, such marking was an error since the first floor was occupied.

Following discovery, Pal and Faiz moved for summary judgment dismissing the complaint on grounds that they did not violate any code section or statute with a reasonable connection to Cotter's claimed injuries, and that plaintiffs' section 205-a claim is speculative. In opposition, plaintiffs offered, inter alia, the report of their expert who opined that defendants failed to comply with Administrative Code, Building Code and Housing Maintenance Code provisions, as alleged by the pleadings, and that the violations constituted a "direct cause" of Cotter's injuries. However, the expert relied only on the documents presented to the court and did not personally inspect the premises.

The motion court granted defendants' summary judgment motions, concluding that plaintiffs failed to "make a prima facie case of negligence under [General Municipal Law] § 205-a against either defendant." The motion court found that plaintiffs' allegation of holes in the floor and accumulated debris was speculative; and there was no evidence that exacerbation of the intensity or spread of the fire caused plaintiff's injuries.

Plaintiffs appeal on the grounds that the motion court erroneously applied the common-law standard of causation rather than the statutory standard, and that there are material questions of fact as to whether defendants violated provisions of the Administrative Code. For the reasons set forth below, we affirm the motion court's summary judgment dismissal.

General Municipal Law § 205-a provides protection to a firefighter injured as a result of a building code violation that "enlarges the hazard of his task by diminishing fire safety or prevention" (*Meyer*, 258 AD2d at 316). To make out a valid claim, a plaintiff firefighter must identify the statute or ordinance that defendant violated, describe the manner in which he was injured, and set forth relevant facts from which it may be inferred that the defendant's negligence directly or indirectly caused him harm (*Zvinys v Richfield Inv. Co.*, 25 AD3d 358, 359 [2006], *lv denied* 7 NY3d 706 [2006], quoting *Zanghi v Niagara*

*Frontier Transp. Commn.*, 85 NY2d 423, 441 [1995]). While a plaintiff need only establish a practical or reasonable connection between the statutory or regulatory violation and the claimed injury (*Giuffrida v Citibank Corp.*, 100 NY2d 72, 81 [2003]), the causation element will not be found where the connection is too speculative to support General Municipal Law § 205-a liability (*see e.g. Downey v Beatrice Epstein Family Partnership, L.P.*, 48 AD3d 616 [2008], *lv denied* 11 NY3d 702 [2008]; *Zvinys*, 25 AD3d at 359; *Kenavan v City of New York*, 267 AD2d 353, 356 [1999], *lv denied* 95 NY2d 756 [2000]).

In this case, defendants met their initial burden by presenting deposition testimony, post-fire inspection reports, and other evidence indicating that there were no violations, specifically holes in the floor and accumulated debris, that directly caused plaintiff's injuries, or that indirectly caused plaintiff's injuries by increasing the inherent dangers of firefighting (*see e.g. Downey*, 48 AD3d at 619; *Zvinys*, 25 AD3d at 359-360). Plaintiffs failed to rebut this showing.

Plaintiffs' assertion that a hole in the floor directly caused the injuries is pure conjecture. Plaintiff conceded that he could not see the floor and does not know what trapped his foot. The firefighters who entered the building with him were similarly unable to describe the condition of the floor. Plaintiffs' allegation that defendants allowed debris to accumulate, causing him to trip and fall, is speculative. By his own admission, plaintiff cannot say that the debris did not consist of those items normally found in a restaurant, which, rather than being negligently placed by defendants, had been knocked down by the force of the spray from the fire hose employed in suppressing the fire.

Plaintiffs' assertion that the "X" marked on the facade is evidence of code violations is wholly unsupported by the record. The FDNY Chief testified that such symbols may not be accurate, the buildings are not reinspected, and indeed that the symbol was incorrect in this case since the building had been occupied for eight years.

There is no record evidence of any violations for unsealed openings, lack of requisite fireproofing, and lack of fire-detection equipment, or lack of extinguishment or suppression systems issued against the building, and plaintiffs' expert did not personally inspect the premises for violations (*see e.g. Zvinys*, 25 AD3d at 359-360). However, even were we to accept that such violations did exist, plaintiffs' claim that they exacerbated the smoke condition and spread of the fire, indirectly causing plaintiff injury, is speculative.

Plaintiffs' expert does not provide any explanation linking the alleged sealing and fireproofing violations to plaintiff's injuries, and his bare conclusions that they caused plaintiff's injuries do not raise a triable issue of fact (*id.*). Furthermore, the inspection reports do not establish where or how the fire started, and, as the motion court noted, the fire and smoke were "already intense" by the time plaintiff arrived. Thus, there is no evidence, nor can it be logically inferred, that plaintiff's risk of harm was increased by the spread or intensification of fire or smoke resulting from alleged violations (*see e.g. Zvinys*, 25 AD3d at 359; *cf. Foiles v V.L.J. Constr. Corp.*, 17 AD3d 297 [2005]).

We have considered plaintiffs' remaining arguments and find them unavailing. Concur—Gonzalez, P.J., Friedman, Catterson, Renwick and Abdus-Salaam, JJ.