[958 NE2d 1183, 935 NYS2d 268]

GLORIA DOOMES, Appellant, v BEST TRANSIT CORP. et al., Defendants, and WARRICK INDUSTRIES, INC., Doing Business as GOSHEN COACH, Respondent.

ANA JIMINIAN, Appellant, v BEST TRANSIT CORP. et al., Defendants, and WARRICK INDUSTRIES, INC., Doing Business as GOSHEN COACH, Respondent.

KELLI RIVERA, Appellant, v BEST TRANSIT CORP. et al., Defendants, and WARRICK INDUSTRIES, INC., Doing Business as GOSHEN COACH, Respondent.

Argued September 14, 2011; decided October 18, 2011

**POINTS OF COUNSEL**

*Pollack Pollack Isaac & DeCicco*, New York City (*Brian J. Isaac* of counsel), *Kahn, Gordon, Timko & Rodrigues, P.C.* (*Nicholis I. Timko* of counsel), *Trolman, Glaser & Lichtman,*

P.C. (*Jeffrey A. Lichtman*, *Michael T. Altman* and *David B. Corley* of counsel), *Shramko & DeLuca LLP* (*Jonathan D. Shramko* of counsel), and *Alan M. Shapey* for appellants. I. The lack of passenger seatbelts claim was not impliedly preempted by Federal Motor Vehicle Safety Standard 208 (49 CFR 571.208) under governing case law on point; the claim is cognizable based on the savings provision of 49 USC § 30103 (e). (*Chevere v Hyundai Motor Co.*, 4 AD3d 226; *Sprietsma v Mercury Marine*, 537 US 51; *Freightliner Corp. v Myrick*, 514 US 280; *Geier v American Honda Motor Co.*, 529 US 861; *Cipollone v Liggett Group, Inc.*, 505 US 504; *American Telephone & Telegraph Co. v Central Office Telephone, Inc.*, 524 US 214; *Florida Lime & Avocado Growers, Inc. v Paul*, 373 US 132; *Medtronic, Inc. v Lohr*, 518 US 470; *Morales v Trans World Airlines, Inc.*, 504 US 374; *Fidelity Fed. Sav. & Loan Assn. v De la Cuesta*, 458 US 141.) II. Dismissal of the weight distribution claim on the ground of legal insufficiency was erroneous as there was a rational view of the evidence which supported the jury's verdict. (*Cohen v Hallmark Cards*, 45 NY2d 493; *Campbell v City of Elmira*, 84 NY2d 505; *Ramos v City of New York*, 68 AD3d 632; *Ochs v Woods*, 221 NY 335; *Altman v Alpha Obstetrics & Gynecology*, 255 AD2d 276, 93 NY2d 801; *Gunder v Murthy*, 185 AD2d 915; *Dranofsky v Collins*, 271 App Div 932; *Denny v Ford Motor Co.*, 87 NY2d 248; *Scarangella v Thomas Built Buses*, 93 NY2d 655; *Sage v Fairchild-Swearingen Corp.*, 70 NY2d 579.)

*Shaub Ahmuty Citrin & Spratt LLP*, Lake Success (*Steven J. Ahmuty, Jr.*, and *Timothy R. Capowski* of counsel), *Nicoletti Hornig & Sweeney*, New York City, and *Camacho Mauro Mulholland, LLP*, for respondent. I. The Safety Act and Federal Motor Vehicle Safety Standard 208 (49 CFR 571.208) preempt plaintiffs' state tort claim that the bus at issue was defective because it was not equipped with seatbelts at the passenger positions. (*Hines v Davidowitz*, 312 US 52; *Gibbons v Ogden*, 9 Wheat [22 US] 1; *Geier v American Honda Motor Co.*, 529 US 861; *Smith v Allwright*, 321 US 649; *Sprietsma v Mercury Marine*, 537 US 51; *Griffith v General Motors Corp.*, 303 F3d 1276, 538 US 1023; *United States of Am. v Chrysler Corp.*, 158 F3d 1350; *Voss v Black & Decker Mfg. Co.*, 59 NY2d 102; *Freightliner Corp. v Myrick*, 514 US 280; *Paccar, Inc. v National Hwy. Traffic Safety Admin.*, 573 F2d 632, 439 US 862.) II. Assuming arguendo that the seatbelt claim was not preempted, this claim should still be dismissed because plaintiffs failed to adduce legally sufficient evidence of causation to warrant its submission to the jury. (*Parochial Bus Sys. v Board of Educ. of*

*City of N.Y.*, 60 NY2d 539; *Town of Massena v Niagara Mohawk Power Corp.*, 45 NY2d 482; *Dickinson v Dowbrands, Inc.*, 261 AD2d 703; *Caiazzo v Volkswagenwerk A. G.*, 647 F2d 241; *Cornier v Spagna*, 101 AD2d 141; *Garcia v Rivera*, 160 AD2d 274, 77 NY2d 801; *Bilbao v Westinghouse Elec. Corp.*, 300 AD2d 23, 100 NY2d 514; *Tiner v General Motors Corp.*, 909 F Supp 112; *Huddell v Levin*, 537 F2d 726; *Lieber v Ford Motor Corp.*, 5 AD3d 1016.) III. Plaintiffs failed to adduce legally sufficient proof to warrant submission of their "weight distribution" claim to the jury. IV. On the specific facts of this case, the jury verdict finding that the bus was not defective for purposes of plaintiffs' strict liability design defect claim was fatally inconsistent with its finding that the bus was defective for purposes of their breach of implied warranty claim. (*Giunta v Delta Intl. Mach.*, 300 AD2d 350; *DiMura v City of Albany*, 239 AD2d 828; *Denny v Ford Motor Co.*, 87 NY2d 248, 87 NY2d 969; *Voss v Black & Decker Mfg. Co.*, 59 NY2d 102; *Fritz v White Consol. Indus.*, 306 AD2d 896; *Barry v Manglass*, 55 NY2d 803; *Bradley v Earl B. Feiden, Inc.*, 30 AD3d 709, 8 NY3d 265.)

*Richard P. Schweitzer, P.L.L.C.* (*Richard P. Schweitzer*, of the District of Columbia bar, admitted pro hac vice and *Craig M. Cibak* of counsel), for American Bus Association, Inc., amicus curiae. I. Plaintiffs would impose a safety standard that actually conflicts with federal law, and is preempted. (*Geier v American Honda Motor Co.*, 529 US 861; *Freightliner Corp. v Myrick*, 514 US 280; *Sprietsma v Mercury Marine*, 537 US 51; *English v General Elec. Co.*, 496 US 72; *Hines v Davidowitz*, 312 US 52.) II. The costs of requiring a retrofit of in use commercial motor vehicles is prohibitive, and the imposition of such a standard here is in conflict with the federal scheme.

*The Mastromarco Firm, PLLP*, Annapolis, Maryland (*Dan R. Mastromarco* of counsel), for United Motorcoach Association, Inc., amicus curiae. Federal Motor Vehicle Safety Standard 208 (49 CFR 571.208) preempts plaintiffs-appellants' lawsuit in the instant action. (*Geier v American Honda Motor Co.*, 529 US 861; *Hodges v Delta Airlines, Inc.*, 44 F3d 334; *Morales v Trans World Airlines, Inc.*, 504 US 374; *Crosby v National Foreign Trade Council*, 530 US 363; *Hines v Davidowitz*, 312 US 52; *Medtronic, Inc. v Lohr*, 518 US 470; *Freightliner Corp. v Myrick*, 514 US 280; *Sprietsma v Mercury Marine*, 537 US 51.)

*Jones Day*, New York City (*David M. Cooper* of counsel), and *Jones Day*, Pittsburgh, Pennsylvania (*Charles H. Moellenberg,*

*Jr.,* and *Leon F. DeJulius, Jr.,* of counsel), for Product Liability Advisory Council, Inc., amicus curiae. Federal Motor Vehicle Safety Standard 208 (49 CFR 571.208) preempts plaintiffs' design defect claim because it conflicts with the regulatory objective of preserving manufacturer choice of safety options. (*Geier v American Honda Motor Co.,* 529 US 861; *Burlington Truck Lines, Inc. v United States,* 371 US 156; *Fidelity Fed. Sav. & Loan Assn. v De la Cuesta,* 458 US 141; *Griffith v General Motors Corp.,* 303 F3d 1276; *Sprietsma v Mercury Marine,* 537 US 51; *Hurley v Motor Coach Indus., Inc.,* 222 F3d 377; *Juliano v Toyota Motor Sales, U.S.A., Inc.,* 20 F Supp 2d 573.)

### OPINION OF THE COURT

Jones, J.

In these personal injury actions arising from a single-vehicle bus accident, two questions are presented for our review. First, whether plaintiffs' seatbelt claims, seeking to hold defendant liable for failure to install passenger seatbelts on the bus, were preempted by federal regulations promulgated by the National Highway Traffic Safety Administration (NHTSA). Second, whether plaintiffs' weight distribution claim, alleging that the negligent modification of the bus' chassis altered the weight balance, steering, and handling of the bus, was supported by legally sufficient evidence. We hold that plaintiffs' seatbelt claims are not preempted by federal regulation, and that plaintiffs' weight distribution claim is not supported by legally sufficient evidence.

## I

On April 23, 1994, a bus carrying approximately 21 passengers was returning from a visit to Adirondack Correctional Facility in Ray Brook, New York. The bus was equipped with a seatbelt for the driver, but not for the passengers. During the trip along the New York State Thruway, the driver, defendant Wagner M. Alcivar, "dozed off" while the bus was traveling approximately 60 miles per hour. The bus veered across the highway from the right-hand lane into the passing lane, and encountered a median strip and a sloping embankment. Alcivar awakened, but his belated attempts to regain control of the bus were futile as the vehicle rolled over several times, injuring many of the passengers.

Plaintiffs Gloria Doomes, individually and as mother and natural guardian of two infants; Ana Jiminian, individually and as

parent of two infants; Kelly Rivera; Sharon Rodriguez; and Heriberto Santiago commenced actions against defendants Best Transit Corp. (Best), the owner of the bus; Ford Motor Company (Ford), the manufacturer of the chassis and cab of the bus; Warrick Industries, Inc. (Warrick), the manufacturer who completed the construction of the bus; J&R Tours, the prior owner of the bus; and Alcivar, the bus driver.[1] Plaintiffs alleged that the absence of passenger seatbelts and the improper weight distribution of the bus, created by the negligent modification of the bus' chassis, caused the injuries.

Prior to trial, Supreme Court dismissed the claims against J&R Tours, plaintiffs settled with Ford, and Alcivar was deported. Warrick moved to preclude any evidence that the bus was defective or that it was negligent due to a lack of seatbelts on the ground that Federal Motor Vehicle Safety Standard (FMVSS) 208 (49 CFR 571.208), which did not require the installation of passenger seatbelts, preempted any claims of liability for failure to install such seatbelts. Supreme Court reserved decision on the motion.

Following trial, a jury determined that Best and Alcivar were negligent in the operation of the bus, and that Warrick defectively manufactured the bus and breached the warranty of fitness for ordinary purposes by modifying the chassis and altering the weight distribution of the bus. It also determined that Best negligently operated the bus without passenger seatbelts and Warrick breached the warranty of fitness for ordinary purposes by failing to install seatbelts. These failures were deemed substantial factors in causing the accident, and the absence of seatbelts was determined as a substantial factor in causing injury to all plaintiffs. Consequently, with respect to fault for the accident, the jury apportioned 60% liability to Best and Alcivar, and 40% liability to Warrick. As for fault for the lack of passenger seatbelts, the jury assigned Best 20% liability and Warrick 80% liability.[2] The defendants moved to set aside the verdict pursuant to CPLR 4404 and Supreme Court granted the motion to the extent of ordering a new trial on damages unless plaintiffs stipulated to a reduction in damages. Plaintiffs so

---

**1.** Plaintiffs Doomes and Jiminian also named as a defendant, Operation Prison Gap, a company that leased buses from Best and provided transportation to prisons. Operation Prison Gap never appeared in the action and a default judgment was entered against it.

**2.** The jury awarded Doomes $8 million, Rodriguez $2.5 million, Santiago $1 million, Rivera $5 million, and Jiminian $10 million.

stipulated, and Supreme Court also reduced awards for past pain and suffering pursuant to General Obligations Law § 15-108.[3]

The Appellate Division reversed the judgments and dismissed the complaints as against Warrick (68 AD3d 504 [1st Dept 2009]). The court held the seatbelts claims preempted, reasoning that these claims conflicted with the federal goal of establishing a uniform regulatory scheme for transit safety. With respect to plaintiffs' weight distribution claim, the court determined that the evidence was legally insufficient to establish that Warrick's modification of the chassis was a proximate cause of the accident.

This Court granted plaintiffs leave to appeal, and we now reverse.

## II

Under the Supremacy Clause of the United States Constitution (US Const, art VI, cl 2), preemption analysis requires us "to ascertain the intent of Congress" (*Matter of People v Applied Card Sys., Inc.*, 11 NY3d 105, 113 [2008], quoting *California Fed. Sav. & Loan Assn. v Guerra*, 479 US 272, 280 [1987]). Express preemptive intent is discerned from the plain language of a statutory provision (*see Balbuena v IDR Realty LLC*, 6 NY3d 338, 356 [2006]). Implied preemption may be found in two distinct ways when either "the Federal legislation is so comprehensive in its scope that it is inferable that Congress wished fully to occupy the field of its subject matter (field preemption), or because State law conflicts with the Federal law" (*Guice v Charles Schwab & Co.*, 89 NY2d 31, 39 [1996] [internal quotation marks omitted]).

Plaintiffs contend that the Appellate Division erred in finding preemption because the relevant portions of FMVSS 208, compelling only the inclusion of a driver seatbelt, neither reflects a pervasive scheme of regulation nor makes compliance with federal and state standards impossible. Moreover, it is argued that the United States Supreme Court's recent decision in *Williamson v Mazda Motor of America, Inc.* (562 US —, 131 S Ct 1131 [2011]) disposes of this appeal in plaintiffs' favor. Warrick

---

**3.** Supreme Court entered the following judgments, with interest, in favor of plaintiffs: Rivera, $2,728,194.30; Jiminian, $3,874,654.59; and Doomes, $3,388,992.38. Rodriguez and Santiago settled for $850,000 and $550,000, respectively, and are beyond the scope of this appeal.

claims that the statute affords manufacturers the option to choose among different protective devices for installation at the driver's seat, and this availability of discretion places this appeal squarely within the holding of *Geier v American Honda Motor Co.* (529 US 861 [2000]).

First turning to express preemption, the pertinent statutory clause of the National Traffic and Motor Vehicle Safety Act (Safety Act) provides that

> "[w]hen a motor vehicle safety standard is in effect under this chapter, a State or a political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter. However, the United State Government, a State, or a political subdivision of a State may prescribe a standard for a motor vehicle or motor vehicle equipment obtained for its own use that imposes a higher performance requirement than that required by the otherwise applicable standard under this chapter" (49 USC § 30103 [b]).

In *Geier*, the Supreme Court considered the preemptive effect of a pre-1994 edition of the above preemption clause that similarly limited the authority of states to prescribe motor vehicle safety standards (*see* former 15 USC § 1392 [d]). However, rather than parsing the precise significance of the plain language of the provision, the Supreme Court concluded that Congress did not intend the preemption clause to be construed so broadly as to preclude state claims because the "saving" clause explicitly reserved a right to assert common-law claims (*see* 529 US at 867-868).

As relevant here, the instant saving clause provides that "[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law" (49 USC § 30103 [e]). When read in conjunction with the preemption provision, the saving clause permits the commencement of common-law claims; compliance with applicable federal motor vehicle safety standards is not necessarily a preclusive bar. Accordingly, the presence of the saving clause limits a potentially broad reading of the preemption provision and does not expressly prohibit plaintiffs' seatbelt claims.

With respect to implied "field preemption," it does not appear that the federal statutes were intended to so greatly

envelop the field of motor vehicle safety standards as to leave little room for state participation or operation. Certainly, the guidelines, as the Appellate Division noted, are consonant "with the federal goal of establishing uniform standards" (68 AD3d at 506). And, the preemption clause constrains states from enacting guidelines that deviate from federal standards (*see* 49 USC § 30103 [b]). However, the goal of uniformity cannot be singularly pursued at the expense of the Safety Act's primary purpose to "reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents" (former 15 USC § 1381; *see also* 49 CFR 571.208 [S2]). This is evinced by the presence of the saving clause which expressly allows the commencement of state common-law claims (*see* 49 USC § 30103 [e]). As the Supreme Court has reasoned previously, "the saving clause reflects a congressional determination that occasional nonuniformity is a small price to pay for a system in which juries not only create, but also enforce, safety standards" (*Geier*, 529 US at 871). Further, the saving clause represents a purposeful intent to allow meaningful state participation as a finding of preemption would "treat all such federal standards as if they were *maximum* standards, eliminating the possibility that the federal agency seeks only to set forth a *minimum* standard potentially supplemented through state tort law" (*Williamson*, 562 US at —, 131 S Ct at 1139 [emphasis added]). Consequently, there is no implied "field preemption" as the explicit permission of common-law claims indicates that the federal statutes promulgated under the Safety Act are not so pervasive as to encompass the entire scheme of motor vehicle safety guidelines.

 The significant point of contention between the parties is whether plaintiffs' seatbelt claims are barred under implied conflict preemption. We conclude they are not.

Implied conflict preemption can arise in two situations: when "it is 'impossible for a private party to comply with both state and federal requirements' . . . or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' " (*Freightliner Corp. v Myrick*, 514 US 280, 287 [1995]). The Supreme Court has made clear that a state law will be preempted under the latter form of implied conflict preemption only where it would frustrate "a *significant objective* of the federal regulation" (*Williamson*, 562 US at —, 131 S Ct at 1136 [emphasis added]).

Here, the gross vehicle weight rating (GVWR) of the bus at issue was over 10,000 pounds, placing it within the ambit of

S4.4.2.1 and S4.4.2.2 of FMVSS 208 (*see* 49 CFR 571.208). S4.4.2.1 states: "First option—complete passenger protection system—*driver only*. The vehicle shall meet the crash protection requirements of S5, with respect to an anthropomorphic test dummy in the driver's designated seating position, by means that require no action by vehicle occupants" (emphasis added). S4.4.2.2 provides, in relevant part: "Second option—belt system—*driver only*. The vehicle shall, at the driver's designated seating position, have either a Type 1 or Type 2 seat belt assembly that conforms to § 571.209 of this part and S7.2 of this Standard" (emphasis added). A plain reading of S4.4.2.1 and S4.4.2.2 shows that they only mandate the inclusion of protective devices at the driver's seat of a bus and are absolutely silent regarding the installation of passenger seatbelts. This does not make it impossible to comply with both the federal standards and the gravamen of plaintiffs' seatbelt claims, which seek liability for the failure to install such protective devices (*see Sprietsma v Mercury Marine*, 537 US 51, 67-68 [2002]; *Freightliner*, 514 US at 289). Quite simply, Warrick could have installed passenger and driver seatbelts without running afoul of federal motor vehicle safety standards. Hence, plaintiffs' seatbelt claims are not preempted under the first category of implied conflict preemption.

Warrick primarily contends that FMVSS 208 affords manufacturers of buses with a GVWR over 10,000 pounds the latitude to choose among certain safety devices as S4.2.2.1 and S4.2.2.2 specifically provide manufacturers the discretion to opt between either a seatbelt or "complete passenger protection system" for the driver. And, as a result of this deliberate provision of choice between differing protective devices for the driver's seat, Warrick argues that plaintiffs' claims are preempted under the holding of *Geier*. However, this position is founded on an erroneous premise and an overly expansive reading of *Geier*.

As an initial matter, Warrick incorrectly contends that its ability to choose between safety devices for the *driver's seat* should preempt common-law claims seeking the inclusion of passenger seatbelts. That it had the discretion to choose the type of protective device for the driver's seat has no bearing on the issue of whether passenger seatbelts should have been installed, particularly when the relevant portions of FMVSS 208 are silent regarding passenger seatbelts.

Moreover, *Geier* does not have the expansive effect Warrick seeks. In that case, the Supreme Court concluded that the

plaintiffs' state claims, which sought immediate installation of airbags, were preempted because they conflicted with an expressed intent by the Department of Transportation to permit manufacturers to select from an array of protective devices and gradually incorporate them into motor vehicles.[4] Absent such a deliberate policy or intent, *Geier*'s holding, which is limited to its particular facts and regulations, should not be applied to any case where manufacturers are merely provided some form of choice.

Indeed, the case before us is more analogous to the Supreme Court's recent decision in *Williamson*, which held that the plaintiff's seatbelt claims were not preempted. In that case, the plaintiff's decedent, who was situated on a rear inner seat of a passenger vehicle, was killed in a motor vehicle accident while wearing a lap belt; and the complaint alleged that a lap-and-shoulder belt should have been installed. The relevant FMVSS regulation required the installation of lap-and-shoulder belts at seats next to the doors or frames of passenger vehicles. But for rear inner seats, manufacturers were permitted to choose between lap belts and lap-and-shoulder belts (*see* 562 US at —, 131 S Ct at 1134). The defendant manufacturer argued that the plaintiff's seatbelt claims were preempted because they would interfere with the explicit provision of choice in the federal regulation.

The Supreme Court first limited the holding of *Geier* to its particular facts as the "history [of the regulation], the agency's contemporaneous explanation, and the Government's current understanding of the regulation convinced us that manufacturer choice was an important regulatory objective. And since the tort suit stood as an obstacle to the accomplishment of that objective, we found the tort suit pre-empted" (562 US at —, 131 S Ct at 1137). Second, although like *Geier* the relevant regulations in *Williamson* permitted manufacturers a choice, the Supreme Court concluded that there were critical differences between the regulations in the two cases.[5] It was explained that "[w]hile an

---

4. The FMVSS regulation in *Geier* intentionally encouraged a variety of safety devices because the Department of Transportation hoped that this variety would result in better information about the comparative effectiveness of the devices and the eventual development of "alternative, cheaper, and safer passive restraint systems" (*Geier*, 529 US at 879).

5. Unlike the airbag regulation in *Geier*, the federal agency in *Williamson* "was not concerned about consumer acceptance; it was convinced that lap-and-shoulder belts would increase safety; it did not fear

agency could base a decision to pre-empt on its cost-effectiveness judgment, we are satisfied that the rule-making record at issue here discloses no such pre-emptive intent" (562 US at —, 131 S Ct at 1139). Here, an examination of the relevant federal regulations confirms the lack of preemptive intent with respect to passenger seatbelts for buses with a GVWR over 10,000 pounds.

The NHTSA has consistently acknowledged the enhanced safety benefits of seatbelts, but it has neither imposed the installation of passenger seatbelts, nor expressed an intention to provide such an option to manufacturers of the type of bus involved in the instant appeal. In 1973, the gravamen of the regulation pertained to the modification of passenger seats because they were a significant factor in causation of injury "[b]y being too weak, too low, and too hostile" (38 Fed Reg 4776, 4776 [1973]). Any discussion of seatbelts did not reflect an intention to provide a discretionary option to manufacturers, but rather, considered its impact on the structure of passenger seats. "If a seat is equipped with belts, the performance characteristics of the seats are modified in some respects" (*id.* at 4776-4777).

In 1988 and 1989, the proposed rule-making regulations considered the installation of lap-shoulder belts in "passenger cars, light trucks, multipurpose passenger vehicles (e.g., passenger vans and utility vehicles), and small buses" (53 Fed Reg 47982, 47982 [1988]; 54 Fed Reg 46257, 46257 [1989]), but did not consider the inclusion of such protective devices for buses with a GVWR over 10,000 pounds. Again, the NHTSA acknowledged the efficacy of passenger seatbelts in enhancing safety as "a number of studies, evaluating thousands of cases, show that lap belts in the rear seat are effective in preventing deaths and reducing injuries. NHTSA knows of no comprehensive studies by any person or organization that suggests that rear seat lap belts are anything less than effective" (53 Fed Reg 47982, 47984). But in both 1988 and 1989, buses of the type involved

---

additional safety risks arising from use of those belts; it had no interest in assuring a mix of devices; and, though it was concerned about additional costs, that concern was diminishing" (*Williamson,* 562 US at —, 131 S Ct at 1138).
Rather, "the more important reason why DOT did not require lap-and-shoulder belts for rear inner seats was that it thought that this requirement would not be cost-effective" (562 US at —, 131 S Ct at 1139).

in the instant accident were specifically excluded from consideration.[6] Any "option of installing either lap-only belts or lap/shoulder belts in rear seats" was limited to other forms of vehicles (54 Fed Reg 46257, 46258).

Further, any contention that manufacturers impliedly had an option to install rear passenger seatbelts in buses over 10,000 pounds, because the NHTSA was cognizant of the safety benefits of rear passenger seatbelts, is belied by the plain language of FMVSS 208 and the federal regulations which simply do not consider the inclusion of such protective devices for vehicles of this type.[7] As such, like *Williamson*, there is simply no preemptive intent to be discerned from the regulations with respect to state common-law claims seeking the inclusion of passenger seatbelts in buses of this type.

In sum, we find neither express nor implied preemption of plaintiffs' seatbelt claims.

## III

■ Warrick asserts that the Appellate Division correctly concluded that the evidence was legally insufficient with respect to plaintiffs' weight distribution claim because it was speculative. We find this position persuasive.

Generally, in a strict products liability claim, "the manufacturer of a defective product is liable to any person injured or damaged if the defect was a substantial factor in bringing about

---

6. *"4. Vehicle Types NOT Covered by This Proposal*
"a. Vehicles with a Gross Vehicle Weight Rating of More Than 10,000 Pounds
"NHTSA has traditionally used gross vehicle weight ratings as dividing lines for the purposes of applying occupant crash protection standards. These groupings reflect the differences in the vehicles' functions and crash responses and exposure. This proposal would also use such a dividing line, by addressing only vehicles with a gross vehicle weight rating of 10,000 pounds or less" (53 Fed Reg 47982, 47987; 54 Fed Reg 46257, 46261).

7. The NHTSA has not considered the inclusion of passenger seatbelts for buses with a GVWR over 10,000 pounds until recently. In its notice of proposed rulemaking of August 18, 2010, the NHTSA reviewed the nature of injuries caused by rollover accidents and espoused a goal of "reduc[ing] occupant ejections" (75 Fed Reg 50958, 50959 [2010]). To that end, it has considered a definition of "motorcoach" that would specifically apply to "buses above 10,000 lb [gross vehicle weight rating]" (*id.* at 50966). In the event the definition includes buses with a GVWR over 10,000 pounds, the inclusion of seatbelts is being considered as they are "estimated to be 77 percent effective in preventing fatal injuries in rollover crashes, primarily by preventing ejection" (*id.* at 50971).

his injury or damages" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 106-107 [1983]). A claim of strict products liability can assert either a (1) manufacturing defect, (2) a design defect, or (3) a failure to provide adequate warning regarding the use of a product (*see id.*). Here, where plaintiffs allege a design defect based on the negligent modification of the weight distribution of the bus' chassis, the relevant inquiry is "whether the product, as designed, was not reasonably safe" (*id.* at 107). Accordingly, plaintiffs carry the burden of showing "that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner" (*id.* at 108). Moreover, plaintiffs must show that the design defect was a proximate cause of their injuries (*id.* at 109).

For the chassis at issue, Ford specified an overall GVWR of 11,500 pounds with a gross rear axle rating of 7,810 pounds, and a gross front axle rating of 4,600 pounds. Warrick modified the chassis, extending its length from 138 inches to 186 inches. It also increased the overall gross vehicle weight rating from 11,500 pounds to 13,500 pounds by adding a leaf spring to the gross rear axle, increasing its rating from 7,810 pounds to 9,300 pounds. The front axle remained untouched. Plaintiffs contend that a proper apportionment of weight between the axles is 60% (rear axle) and 40% (front axle), but as modified, the bus chassis had an improper distribution of 68% and 32%, respectively. Moreover, Warrick failed to install a tag axle that would compensate for the modification and enhance steering and handling.

Plaintiffs' expert opined that the purportedly negligent weight distribution was a substantial factor in causing the accident, but any conclusions as to the bus' weight were based on speculative weight estimates of passengers, fuel, and luggage, and not empirical data (*see Fotiatis v Cambridge Hall Tenants Corp.*, 70 AD3d 631, 632 [2d Dept 2010]; *Briggs v 2244 Morris L.P.*, 30 AD3d 216, 216 [1st Dept 2006]). More specifically, plaintiffs' expert testified that the evidence alluded to the inattentiveness of the driver as a contributing factor; that he attempted to calculate the weight of the bus, but there was insufficient information; and he could not tell with certainty whether the proper 60% to 40% weight ratio existed as his opinions were not from his "experience and knowledge of [the] particular bus." While plaintiffs' expert discussed various weight ratings for different components of the bus, he failed to present any calculations

that would indicate that the weight distribution contributed to the rollover accident. Therefore, any findings that the weight distribution adversely affected steering and handling were conclusory and based on speculative data that failed to establish a causal relationship to the accident (*see Cotter v Pal & Lee Inc.*, 86 AD3d 463, 466-467 [1st Dept 2011]).

Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to the Appellate Division for consideration of issues raised but not determined on the appeal to that court.

PIGOTT, J. (dissenting, in part). Under implied conflict preemption, the issue upon which all parties agree this case rises or falls, state common-law claims are barred in situations where it is "impossible for a private party to comply with both state and federal requirements" (*English v General Elec. Co.*, 496 US 72, 78-79 [1990]) or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (*Hines v Davidowitz*, 312 US 52, 67 [1941]). It seems evident to me that plaintiffs' state common-law negligence and products liability claims as they relate to the lack of passenger seatbelts do just that by "standing as an obstacle to the accomplishment and execution of the full purposes and objectives" of the National Traffic and Motor Vehicle Safety Act of 1966 and the Federal Motor Vehicle Safety Standards (FMVSS).

Whether or not a state law "stands as an obstacle to the accomplishment" of a federal regulation's "significant objective" is determined by examining the history of the regulation, "the promulgating agency's contemporaneous explanation of its objectives, and the agency's current views of the regulation's pre-emptive effect" (*Williamson v Mazda Motor of America, Inc.*, 562 US —, —, 131 S Ct 1131, 1136 [2011], citing *Geier v American Honda Motor Co.*, 529 US 861 [2000]). FMVSS 208 provides that buses like the one in this case, which have a gross vehicle weight rating of over 10,000 pounds, must meet one of the two following requirements pursuant to 49 CFR 571.208 (S4.4.2):

> "S4.4.2.1. First option—complete passenger protection system—*driver only*. The vehicle shall meet the crash protection requirements of S5, with respect to an anthropomorphic test dummy in the driver's designated seating position, by means that require no action by vehicle occupants.

"S4.4.2.2. Second option—belt system—*driver only.* The vehicle shall, at the driver's designated seating position, have either a Type 1 or a Type 2 seat belt assembly that conforms to § 571.209 of this part and S7.2 of this Standard" (emphasis supplied).

The history of this regulation as it relates to the passenger seatbelt requirements in buses such as we have in this case demonstrates that the National Highway Traffic Safety Administration (NHTSA) made considered policy judgments based on safety, cost and practicability in distinguishing between those buses that must have passenger seatbelts and those that don't. For instance, although NHTSA has not mandated passenger seatbelts for buses in excess of 10,000 pounds (large buses), it has concluded that buses weighing 10,000 pounds or less (small buses) must have them (*see* 49 CFR 571.208 [S4.4.3.2]).

The regulations for large and small buses must be viewed as part of NHTSA's overall regulatory scheme. Because NHTSA purposefully made these distinctions, it is clear that it did not leave unregulated the field of passenger seatbelts in large buses. Rather it made a conscious decision that seatbelts in these vehicles were unnecessary for passenger safety given their size and function.

This becomes apparent in a review of the regulation's history as it relates to the inclusion of seatbelts in buses. There is a reason for this 10,000 pound dividing line; such "groupings reflect the differences in the vehicles' functions and crash responses and exposure" (53 Fed Reg 47982, 47987 [1988]). Indeed, it is the safety concerns here that distinguish this case from *Williamson* because, in the latter case, the United States Supreme Court concluded that the Department of Transportation did not require lap-and-shoulder belts in rear aisle seats because of its belief that such restraints would cause "entry and exit problems for occupants" and were not cost effective, *not* because of safety concerns (*Williamson*, 562 US at —, 131 S Ct at 1138-1139).

Here, it is apparent that safety was paramount in NHTSA's decision. NHTSA at one time proposed a standard that would have required buses like the one in this case to contain passenger seatbelts (*see* 38 Fed Reg 4776 [1973]), only to retract that proposal because the seating in such buses, as designed, was deemed adequate for safety purposes (*see* 39 Fed Reg 27585 [1974]). This retraction was referred to by NHTSA's chief

counsel in 1992, who commented that pending legislation in New York that would have required intercity buses operating within the state to install passenger seatbelts in buses weighing more than 10,000 pounds was likely preempted by federal law:

"NHTSA expressly determined that there is not a safety need for safety belts or another type of occupant crash protection at these seating positions. See, 39 FR 27585, July 30, 1974. With respect to these large buses, the New York bill would be preempted to the extent that it requires seat belts to be installed at seating positions other than the driver's seating position" (Letter from NHTSA to C.N. Littler, Motor Coach Industries, Aug. 19, 1992, at 1-2).

Based on the foregoing, it is clear that NHTSA has concluded that larger buses are safer than smaller buses, and that the latter should have passenger seatbelts while the former need not. In holding that plaintiffs' claim is not preempted, this Court has, in essence, required that motor carriers of large buses must comply with small bus regulations. I don't find that to be Congress' intent.

It is evident from the regulatory scheme that NHTSA made considered policy judgments in promulgating a standard that did not mandate passenger seatbelts on large buses. This was not a failure to regulate on NHTSA's part, as is evidenced by its regulation requiring seatbelts on small buses. When these regulations are considered in light of NHTSA's reasons for using a 10,000 pound dividing line, it is fair to say that NHTSA intended to be the decision maker in this area, which would preempt common-law tort suits like the one at bar, which stand as an obstacle to the Act's objectives of safety and cost (see 49 USC § 30111 [a] [providing that "(t)he Secretary of Transportation shall prescribe motor vehicle safety standards . . . (that) shall be practicable, meet the need for motor vehicle safety, and be stated in objective terms"]).* Not only that, the imposition of

---

* As recently as August 2010, NHTSA issued a Notice of Proposed Rulemaking discussing amending FMVSS 208 "to require lap/shoulder seat belts for each passenger seating position in *new* motorcoaches," the main purpose of the proposed rule being to "reduce occupant ejections" (75 Fed Reg 50958, 50958-50959 [2010] [emphasis supplied]). NHTSA noted that although it "was not proposing at this time that used buses be required to be retrofitted with

a common-law requirement that large bus carriers must, in essence, comply with the small bus regulations is completely at odds with Congress' goal of uniformity in the motor vehicle industry (HR Rep No. 1776, 89th Cong, 2d Sess, at 17 [1966]; S Rep No. 1301, 89th Cong, 2d Sess, at 12 [1966], reprinted in 1966 US Code Cong & Admin News, at 2720 ["The centralized, mass production, high volume character of the motor vehicle manufacturing industry in the United States requires that motor vehicle safety standards be not only strong and adequately enforced, *but that they be uniform throughout the country*" (emphasis supplied)]). Therefore, I would affirm the order of the Appellate Division.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ and SMITH concur with Judge JONES; Judge PIGOTT dissents in part and votes to affirm in a separate opinion.

Order reversed, etc.

---

the lap/shoulder belt system" given that "[t]he service life of a motorcoach can be 20 years or longer," it estimated that the cost of retrofitting could range from $6,000 to $34,000 per vehicle (*id.* at 50960).