American Catalog Mailers Assn. v Department of Taxation & Fin.
2026 NY Slip Op 02908
May 7, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

American Catalog Mailers Association, Appellant,
v
Department of Taxation and Finance et al., Respondents.

Decided and Entered:May 7, 2026
CV-25-0865
Calendar Date: February 11, 2026
Before: Garry, P.J., Aarons, Ceresia, Fisher And Mackey, JJ.

Goetz Platzer LLP, New York City (David Gise of counsel) and Brann & Isaacson, Lewiston, Maine (Nathaniel A. Bessey of counsel), for appellant.
Letitia James, Attorney General, Buffalo (Sarah L. Rosenbluth of counsel), for respondents.

[*1]
Aarons, J.
Appeal from an order of the Supreme Court (James Ferreira, J.), entered April 28, 2025 in Albany County, which, among other things, partially granted defendants' cross-motion for summary judgment dismissing the complaint.
Pursuant to Tax Law article 9-A, foreign (out-of-state) business corporations must pay a franchise tax for the privilege of doing business in this state in a corporate or organized capacity (see Tax Law § 209 [1] [a]). The business corporation franchise tax is an excise tax that may be based upon the corporation's net income (see Tax Law §§ 209, 210 [1] [a]; Matter of Wurlitzer v State Tax Commn., 35 NY2d 100, 104 [1974]). The State's authority to tax interstate commerce, however, is constrained by federal law, specifically the Interstate Income Tax Act of 1959, otherwise known as Public Law 86-272 (15 USC §§ 381-384). As relevant here, Public Law 86-272 "prohibits a State from taxing the income of a corporation whose only business activities within the State consist of solicitation of orders for tangible goods, provided that the orders are sent outside the State for approval and the goods are delivered from out of state" (Wisconsin Dept. of Revenue v William Wrigley, Jr., Co., 505 US 214, 216 [1992] [internal quotation marks omitted]). Defendant Department of Taxation and Finance implements that federal limitation through 20 NYCRR 1-2.10, titled "Foreign corporations - Public Law 86-272." Under that regulation, "[p]ursuant to Public Law 86-272 . . . a foreign corporation is exempt from [the franchise tax] if its activities are limited to those described in that law" (20 NYCRR 1-2.10 [a]).
Plaintiff is a not-for-profit membership organization representing merchants who sell merchandise in interstate commerce through catalogs, by telephone and/or over the Internet. Plaintiff commenced this action in April 2024 seeking a declaration that 20 NYCRR 1-2.10 is preempted by Public Law 86-272, and that the Department's retroactive application of 20 NYCRR 1-2.10 to 2015 violates due process. Following joinder of issue, cross-motions for summary judgment ensued. Supreme Court partially granted defendants' motion with respect to retroactivity but otherwise denied it and issued a declaration that 20 NYCRR 1-2.10 is not preempted by Public Law 86-272 (2025 NY Slip Op 31588[U] [Sup Ct, Albany County 2025]). Plaintiff appeals. We affirm.
"The federal preemption doctrine has its roots in the Supremacy Clause of the United States Constitution, and federal preemption of state laws generally can occur in three ways: where Congress has expressly preempted state law, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law, or where federal law conflicts with state law" (Scaletta v Michels Power, Inc., 236 AD3d 1, 4 [3d Dept 2025] [internal quotation marks and citations omitted], appeal dismissed 43 NY3d 981 [2025]). As relevant here, "[c]onflict preemption . . . has [*2]been found where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, the latter of which is often referred to as obstacle preemption" (Sutton 58 Assoc. LLC v Pilevsky, 36 NY3d 297, 306 [2020] [internal quotation marks and citations omitted], cert dismissed ___ US ___, 142 S Ct 53 [2021]; see Matter of Quigley v Village of E. Aurora, 193 AD3d 207, 211 [3d Dept 2021], lv denied 37 NY3d 908 [2021]). We may only conclude that 20 NYCRR 1-2.10 is preempted under an obstacle theory if the regulation "would frustrate 'a significant objective of' " Public Law 86-272 (Doomes v Best Tr. Corp., 17 NY3d 594, 603 [2011], quoting Williamson v Mazda Motor of America, Inc., 562 US 323, 330 [2011]).
"It is never assumed lightly that Congress has derogated state regulation, but instead courts have addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law" (Balbuena v IDR Realty LLC, 6 NY3d 338, 356 [2006] [internal quotation marks, brackets and citations omitted]). "Where a federal law treads on a traditional state power [such as the power to tax], this presumption is especially strong, and is overcome only where the statute evidences that preemption is the clear and manifest purpose of Congress" (Matter of Disney Enters., Inc. v Tax Appeals Trib. of State of N.Y., 10 NY3d 392, 403 [2008] [internal quotation marks and citations omitted]; see Wyeth v Levine, 555 US 555, 565 [2009]).
Plaintiff's preemption challenge to 20 NYCRR 1-2.10 is "solely facial" (Matter of Independent Ins. Agents & Brokers of N.Y., Inc. v New York State Dept. of Fin. Servs., 39 NY3d 56, 64 [2022]; see Department of Taxation and Finance of N.Y. v Milhelm Attea & Bros., 512 US 61, 69 [1994]). Accordingly, we confine our analysis to those "alleged defects that inhere in the regulation[ ] as written" (Department of Taxation and Finance of N.Y. v Milhelm Attea & Bros., 512 US at 69). Applied questions — including whether a particular corporation's activities fall within or outside the immunity conferred by Public Law 86-272 — are not before us.
"Ultimately, any preemption analysis requires that we ascertain the intent of Congress" (Sutton 58 Assoc. LLC v Pilevsky, 36 NY3d at 306 [internal quotation marks and citations omitted]). Public Law 86-272 prohibits a State from imposing "a net income tax derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are. . . the solicitation of orders by such person, or his [or her] representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State" (15 USC § 381 [a] [1]). The statute[*3]"was designed to define clearly a lower limit for [a state's] exercise of [its taxing] power," and "[c]larity that would remove uncertainty was Congress' primary goal" (Heublein, Inc. v South Carolina Tax Comm'n, 409 US 275, 280 [1972]). Put another way, "[t]he rather limited purpose of Public Law 86-272 was . . . to establish a minimum standard for imposition of a state net-income tax based on solicitation of interstate sales" (Matter of Disney Enters., Inc. v Tax Appeals Trib. of State of N.Y., 10 NY3d at 404 [internal quotation marks and citations omitted]).
Consistent with that purpose, the statute establishes a functional standard for immunity — activities that are solely solicitation — that must be applied across a wide range of business practices (see Wisconsin Dept. of Revenue v William Wrigley, Jr., Co., 505 US at 228-229). That standard, however, did not prove to be so easily applied, necessitating judicial interpretation of Public Law 86-272, resulting in an expansion of statutory tax immunity to cover activities that are "entirely ancillary" to solicitation or de minimis nonsolicitation (see id. at 223, 228-229, 231).
Similarly, this case requires us to interpret Public Law 86-272 to determine if it preempts 20 NYCRR 1-2.10. Although the Department, through that regulation, administers Public Law 86-272, "the [Department's] interpretation of a [f]ederal statute, not presumptively within its expertise, cannot relieve the courts of the obligation to resolve this pure question of law" (Matter of Gillette Co. v State Tax Commn., 56 AD2d 475, 478 [3d Dept 1977] [internal citations omitted], affd 45 NY2d 846 [1978]; accord Matter of Disney Enters., Inc. v Tax Appeals Trib. of State of New York, 40 AD3d 49, 51 [3d Dept 2007], affd 10 NY3d 392 [2008]).
The challenged regulation provides, in relevant part, as follows. "[T]o be exempt under Public Law 86-272, the activities of the corporation in New York State must be limited to" the solicitation of orders by employees or representatives in New York State and/or "the solicitation of orders via the Internet in New York State" (20 NYCRR 1-2.10 [a] [emphasis added]). "The exemption under the provisions of Public Law 86-272 is limited to the solicitation of orders for the sale of tangible personal property and does not include the solicitation of orders for the sale of services or intangible property" (20 NYCRR 1-2.10 [e]). Further, "[a]ctivities in New York State beyond the solicitation of orders will subject a corporation to tax in New York State unless such activities are de minimis" (20 NYCRR 1-2.10 [f] [emphasis added]). To determine "whether a corporation's activities exceed the solicitation of orders, all of the corporation's activities in New York State will be considered" (20 NYCRR 1-2.10 [f] [emphasis added]).
Subsection (i) of the regulation sets forth illustrative "examples of foreign corporations that either are exempt or not exempt from tax" based upon their Internet activities (20 [*4]NYCRR 1-2.10 [i]). A foreign corporation that "solicits sales of tangible personal property on its website and provides assistance to customers by posting a list of static frequently asked questions . . . and answers on the corporation's website" is exempt from the franchise tax because the Department considers that activity de minimis (20 NYCRR 1-2.10 [i] [example 6]). By contrast, a foreign corporation is not exempt if it "regularly provides assistance to its customers after its products have been delivered, either by email or electronic 'chat' that customers initiate by clicking on an icon on the corporation's website," because the Department does not consider this activity de minimis or entirely ancillary to solicitation (20 NYCRR 1-2.10 [i] [example 7]). "A foreign corporation [that] places Internet 'cookies' onto the computers or other electronic devices of is customers" will not be considered exempt from the franchise tax if those cookies "gather customer search information that will be used to adjust production schedules and inventory amounts, develop new products, or identify new items to offer for sale," as this activity is not considered entirely ancillary to solicitation (20 NYCRR 1-2.10 [i] [example 10]).FN1 If, on the other hand, a foreign corporation's Internet cookies "gather customer information that is used only for purposes entirely ancillary to the solicitation of orders for tangible personal property" and "perform no other function," that activity will not result in franchise tax liability (20 NYCRR 1-2.10 [i] [example 11]).FN2
Many of the appellate arguments center on the Department's admitted reliance on South Dakota v Wayfair, Inc. (585 US 162 [2018]) to justify the addition of 20 NYCRR 1-2.10. In Wayfair, the Supreme Court of the United States rejected the longstanding rule that a state may not require an out-of-state seller to collect and remit sales tax absent employees or property in the state. The Court reasoned that businesses may maintain a significant presence in a state's market through digital means, even without a physical presence, and that such activities may justify the imposition of tax obligations consistent with the Commerce Clause. Although Wayfair addressed sales and use taxes and did not address Public Law 86-272, the Department interpreted Wayfair as confirming that a taxpayer's lack of a physical presence in the taxing state does not foreclose a finding that the taxpayer is engaged in business activity within that state based upon its Internet activities.
Although Wayfair sheds light on the regulation's origins, we are not tasked with determining whether Wayfair supports the Department's position that a foreign corporation's Internet-based business activities could result in franchise tax liability. Whatever inspired the Department to add 20 NYCRR 1-2.10, the narrow issue before us now is whether the regulation, as written, stands as an obstacle to the accomplishment and execution of Congress' objectives [*5]in enacting Public Law 86-272 (see Department of Taxation and Finance of N. Y. v Milhelm Attea & Bros., 512 US at 69).
In that regard, plaintiff's central contention is that the regulation impermissibly severs immunity from geography, exposing foreign corporations to franchise tax liability without regard to whether their activities occur within New York. We address this claim in three parts: first, whether tax liability under the regulation is triggered based upon a foreign corporation's Internet-based activity wherever it occurs; second, whether Internet-based activity can constitute in-state business activity under a statute enacted decades before the Internet existed; and third, whether the regulation obstructs Congress' goal of providing a clear rule of immunity for businesses engaged in interstate commerce.
Plaintiff's principal textual argument is that the regulation creates two distinct and independent categories of activity — namely, (1) in-state activities of employees or representatives, and (2) activities engaged in via the Internet, regardless of where they occur. According to plaintiff, this is because subsection (d) of the regulation states that, "[i]n order to be exempt by virtue of Public Law 86-272, the activities in New York State of employees or representatives, or activities engaged in via the Internet, must be limited to the solicitation of orders for the sale of tangible personal property" (20 NYCRR 1-210 [d]). Read in isolation, subsection (d) does refer to Internet activities without reference to geography. Reading 20 NYCRR 1-2.10 as a whole, however, the regulation forecloses plaintiff's interpretation (see generally Matter of Elcor Health Servs. v Novello, 295 AD2d 772, 774 [3d Dept 2002], affd 100 NY2d 273 [2003]; Grant v Cuomo, 130 AD2d 154, 164 [1st Dept 1987], affd 73 NY2d 820 [1988]). The text of the regulation expressly and repeatedly cabins its scope to a corporation's activities "in New York State" (20 NYCRR 1-2.10 [a], [f]). We therefore agree with the Department that 20 NYCRR 1-2.10 is reasonably understood as immunizing a foreign corporation from franchise tax liability when all of its in-state business activities — however conducted — are confined to solicitation, activities ancillary thereto or de minimis, and as withholding immunity when any of its in-state business activities — however conducted — exceed those bounds (see Wisconsin Dept. of Revenue v William Wrigley, Jr., Co., 505 US at 232).
In rejecting plaintiff's reading of the regulation, we do not by extension reject or misunderstand its underlying concern. If a corporation that sells tangible personal property into New York does not or cannot isolate its Internet activities occurring in this state, the regulation may operate to impose franchise tax liability on that corporation based upon its Internet-based activity in general — activity that may, or may not, have a demonstrably sufficient nexus with this state (cf. Complete Auto Transit, Inc. v [*6]Brady, 430 US 274, 277-278 [1977] [no allegation of insufficient nexus]). That said, because imposition of the franchise tax under 20 NYCRR 1-2.10 is predicated on in-state activity, plaintiff's concern reduces to whether the Department can, in practice, administer the regulation in accord with Public Law 86-272's in-state activity requirement — a concern that will need to be assessed on a factual record, not the text of the regulation itself.
Next, urging us to interpret Public Law 86-272 "in accord with the public meaning of its terms at the time of its enactment" in 1959 (Bostock v Clayton County, 590 US 644, 654 [2020]), plaintiff contends that Internet-based activity reaching New York can never constitute activity occurring "within [this] State" under the statute (15 USC § 381 [a] [1]). The text of the statute, however, is framed in functional terms, requiring consideration of the nature or purpose of the business activity, not the means through which that activity is conducted. Congress recognized that a foreign corporation projecting itself into a state for business purposes risked unwittingly incurring net-income tax liability in that state, and chose to immunize a corporation from income tax when its activity in a taxing state was limited to solicitation, however that activity was conducted. That recognition is encapsulated in the words of then-New York Representative William E. Miller, quoted by plaintiff in its brief: "[S]mall business engaged in interstate commerce who do nothing more, perhaps than solicit orders either by a salesman within a [s]tate or even just through the mail, have always thought that they would not be subject to multiple [s]tate taxation" (105 Cong Rec 17771 [1959] [emphasis added]; accord Matter of Disney Enters., Inc. v Tax Appeals Trib. of State of N.Y., 10 NY3d at 404). Consequently, any tension between how business activity was considered to be occurring within a state in 1959 versus today is not enough to establish conflict preemption on the face of the regulation (see New York State Telecom. Assoc., Inc. v James, 101 F4th 135, 155 [2d Cir 2024], cert denied ___ US ___, 145 S Ct 984 [2024]).
Plaintiff's third argument is that the regulation obstructs Congress' objective to provide through Public Law 86-272 a clear rule of immunity for small businesses engaged in interstate commerce (see Sutton 58 Assoc. LLC v Pilevsky, 36 NY3d at 306). We agree that clarity was a " 'significant objective' " of the statute (Doomes v Best Tr. Corp., 17 NY3d at 603 [emphasis omitted], quoting Williamson v Mazda Motor of America, Inc., 562 US at 330). The prospect of small businesses navigating the uncertainties of tax liability in multiple states catalyzed Congressional action, which resulted in a bright(ish) line rule conferring immunity from state net-income tax "where a [foreign] corporation does nothing more within a State than solicit orders" (Matter of Disney Enters., Inc. v Tax Appeals Trib. of State of N.Y., 10 NY3d at [*7]404 [internal quotation marks and citation omitted]; see Heublein, Inc. v South Carolina Tax Comm'n, 409 US at 280; see generally Northwestern States Portland Cement Co. v Minnesota, 358 US 450, 474-475 [1959, Frankfurter, J., dissenting]). Considering that history, the details and examples the Department wrote into the challenged regulation — particularly those in subsection (i) — promote rather than inhibit Congress' original goal of clarity by providing guidance to foreign corporations for which, if any, of their Internet-based activities will, and will not, be considered solicitation, activities entirely ancillary thereto or de minimis in New York State (see 20 NYCRR 1-2.10 [i]). Whether 20 NYCRR 1-2.10 draws the right line between Internet-based solicitation and other activities, and whether certain Internet-based business functions are entirely ancillary to solicitation or de minimis, are not matters that are before us.
For now, it suffices to conclude that plaintiff did not demonstrate that the regulation, "as written," revokes franchise tax immunity where Public Law 86-272 requires it, or that the regulation obstructs the purposes for which that statute was enacted (Department of Taxation and Finance of N. Y. v Milhelm Attea & Bros., 512 US at 69). Accordingly, Supreme Court appropriately declared that 20 NYCRR 1-2.10 is not preempted by Public Law 86-272.
Garry, P.J., Ceresia, Fisher and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1
In this context, a "cookie" is "a small file or part of a file stored on anInternet user's computer, created and subsequently read by a website server, and containing personal information (such as a user identification code, customized preferences, or a record of pages visited)" (Merriam-Webster.com Dictionary, cookie [https://www.merriam-webster.com/dictionary/cookie]).

Footnote 2
Cookies will be considered to be entirely ancillary to solicitation if, for example, a foreign corporation uses them only "to remember items that customers have placed in their shopping cart during a current web session, to store personal information customers have provided to avoid the need for the customers to re-input the information when they return to the corporation's website, and to remind customers what products they have considered during previous sessions" (20 NYCRR 1-2.10 [example 11]).